NOT DESIGNATED FOR PUBLICATION

No. 128,739

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN TIMOTHY SCOTT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed May 29, 2026. Sentence vacated in part and case remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., MALONE and ATCHESON, JJ.


MALONE, J.: Ryan Timothy Scott appeals his sentence in two cases consolidated in district court. Scott claims the district court erred by finding that he is not eligible for duplicative jail credit. He also claims the district court erred by including fees in the journal entry of judgment that were not approved at the sentencing hearing. We agree with Scott on both claims. As a result, we vacate Scott's sentence in part and remand with directions to enter an amended journal entry of judgment correcting the errors.

1

*Factual and procedural background*

In Sedgwick County case No. 24CR6 (Case 1), the State charged Scott with one count of aggravated burglary, two counts of burglary, three counts of misdemeanor theft, and one count of misdemeanor criminal damage to property for crimes committed in September and December 2023. In case No. 24CR710 (Case 2), the State charged Scott with one count of burglary and five counts of felony theft for crimes committed in March 2024. At the parties' request, the two cases were consolidated for trial.

The parties entered a global plea agreement, under which Scott agreed to plead guilty to three counts of burglary and two counts of felony theft. In exchange for his guilty pleas, the State agreed to dismiss the remaining charges and recommend a controlling sentence of 54 months' imprisonment. The district court accepted Scott's plea as knowingly and voluntarily made.

At the consolidated sentencing hearing on January 14, 2025, the district court followed the parties' recommended sentence, imposing a 54-month prison term followed by 12 months' postrelease supervision. Regarding jail credit, the district judge stated:

> "I will order that you be given credit for all the time you've spent in custody in this case. Just the only issue would be if you were being held on parole [for other cases] for any this time. I ran [this sentence] consecutive to those [other cases], so you're not getting dual credit on that."

The district court also ordered Scott to pay $579.33 in restitution and imposed a $100 Board of Indigents' Defense Services (BIDS) application fee. The district court did not approve any other fees nor make findings on any other fees.

The journal entries of judgment documented the 54-month controlling prison sentence followed by 12 months' postrelease supervision for the consolidated cases. As

2

for jail credit, the journal entries awarded 42 days from December 30, 2023, to February 9, 2024, and 278 days from April 11, 2024, to January 14, 2025, for a total of 320 days jail credit. But the journal entries noted that Scott had been held for some of the same dates on a parole violation warrant in two other cases and that he was "not eligible for duplicative credit" against his sentence if he receives credit for the same dates in the parole violation cases. The journal entry of judgment in Case 1 also included a $30 witness fee and a $96.50 B.F.A.W. (bond forfeiture alias warrant) fee—neither of which was approved at the sentencing hearing. Scott timely appealed his sentence.

*Did the district court err by ordering that Scott is not eligible for duplicative jail credit?*

Scott first claims the district court erred by ordering that he is not eligible for duplicative jail credit against his sentence if he receives credit for the same dates in his parole violation cases. Scott argues this order is contrary to the holding in *State v. Ervin*, 320 Kan. 287, 311-12, 566 P.3d 481 (2025). For relief, Scott requests that we vacate the order prohibiting duplicative jail credit and remand with directions to enter an amended journal entry of judgment striking the language prohibiting duplicative jail credit. The State argues that Scott is not entitled to the application of *Ervin* because he was *sentenced* after the effective date of the 2024 statutory amendment to K.S.A. 21-6615(a) addressing jail credit. Alternatively, the State argues that *Ervin* was wrongly decided.

Scott did not raise this issue in district court. He argues that we should address the issue because an appellate court may correct clerical errors in a journal entry for the first time on appeal and because the issue "presents a purely legal claim of error." The State does not address preservation. We observe that Scott was sentenced before the Supreme Court issued its decision in *Ervin*. We also observe that other panels of this court have considered similar jail-credit challenges for the first time on appeal because they involve only a question of law arising on undisputed facts. See, e.g., *State v. Brown*, 65 Kan.

3

App. 2d 663, 671, 570 P.3d 1278 (2025), *rev. denied* 321 Kan. 791 (2025). Following that lead, we will address the merits of Scott's claim.

Resolution of this issue requires interpretation of the jail credit provisions in K.S.A. 21-6615. Statutory interpretation is a question of law over which an appellate court has unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

K.S.A. 21-6615(a) (Self 2023) stated in part:

"(a) In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

In *Ervin*, our Supreme Court held that K.S.A. 2021 Supp. 21-6615(a) requires a district court to award a defendant an allowance for all time spent incarcerated pending the disposition of the defendant's case "regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. But even before *Ervin* was decided, the Kansas Legislature had amended the statute to provide that when computing the defendant's sentence, the district court shall not award jail credit for "[a]ny time awarded as credit in another case when consecutive sentences are imposed on a defendant." L. 2024, ch. 96, § 7, codified at K.S.A. 2024 Supp. 21-6615(a)(2)(A). The effective date of the amendment was May 23, 2024.

Neither party disputes the amount of jail credit the district court awarded to Scott—320 days. The parties disagree about which version of the jail credit statute

4

applies. Scott contends he is entitled to the rule in *Ervin* based on the 2023 version of the statute and the fact that he committed his crimes before the statute was amended. The State contends that Scott is not entitled to relief because he was *sentenced* after the effective date of the statutory amendment.

We find that resolution of this issue is controlled by settled caselaw. "'[T]he fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.'" *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018). Based on this general principal of law, our court has explicitly held that the 2024 amendment to K.S.A. 21-6615(a) applies only to sentences for crimes committed on or after May 23, 2024. *State v. Mitchell*, 66 Kan. App. 2d 196, 207, 579 P.3d 970 (2025) (holding defendant's jail credit was governed by the statute in effect when defendant *committed* the crime), *rev. granted* 321 Kan. 793 (2026); see also *State v. Smith*, No. 127,114, 2026 WL 123620, at *2 (Kan. App. 2026) (unpublished opinion) (same); *State v. Elam*, No. 128,025, 2026 WL 787868, at *11 (Kan. App. 2026) (unpublished opinion) (same). The *Mitchell* court determined that a statute operates prospectively unless its language clearly indicates that the Legislature intended it to operate retroactively, and the Kansas Legislature "provided no indication that it intended the amended jail-credit statute to apply retroactively in any respect." 66 Kan. App. 2d at 204.

The State points to language in *Ervin* where the court found, "K.S.A. 21-6615(a), *as worded when Ervin was sentenced*, directed courts to credit a defendant" for time served pending the disposition of a case. (Emphasis added.) *Ervin*, 320 Kan. at 307. The State claims this language keeps open the possibility the Supreme Court will find that the 2024 statutory amendment will apply to any defendant sentenced after the effective date of the amendment. We are not persuaded by this argument because it runs counter to the fundamental rule that a defendant is sentenced under the sentencing provisions in effect when the crime was committed. *McLinn*, 307 Kan. at 337. *Ervin* was not addressing the

application or retroactivity of the 2024 amendment to K.S.A. 21-6615(a). The isolated language in *Ervin* the State highlights was mere dicta in that opinion.

Also on this point, we note that in *State v. Romey*, 321 Kan. 400, 417-18, 580 P.3d 1 (2025), a case discussing jail credit and decided after *Ervin*, the court stated: "The Legislature has amended the jail-credit statute, but the version we considered in *Ervin* applies because it was in effect when Romey *committed the murder*." (Emphasis added.) As in *Ervin*, the *Romey* court was not addressing the application or retroactivity of the 2024 amendment to K.S.A. 21-6615(a), so the quoted language is merely dicta. But if we were to consider the isolated language in *Romey*, it would support the conclusion that the 2024 amendment to the jail-credit statute applies only to sentences for crimes *committed* on or after May 23, 2024.

The State cites one other case that merits attention because it involves retroactivity of a statute addressing jail credit. First, some background. Before 1988, the Kansas statute on jail credit, K.S.A. 21-4614, was construed by the Kansas Supreme Court as not authorizing or requiring jail time credit to be awarded a defendant for time served in jail as a condition of probation. See, e.g., *State v. Fowler*, 238 Kan. 326, Syl. ¶ 5, 710 P.2d 1268 (1985) (citing K.S.A. 21-4614 [Ensley 1981] and holding there is no statutory requirement that credit be given for jail time served as a condition of probation). All decisions to grant defendants credit for time served in jail as a condition of probation were discretionary. See 238 Kan. at 336-39. In 1988, the Kansas Legislature enacted a new statute, K.S.A. 21-4614a (Ensley 1988), which changed the law to make jail credit mandatory, rather than discretionary, for time a defendant served in jail as a condition of probation. But questions arose as to whether the new statute applied prospectively or retroactively to pending cases.

In *State v. King*, 14 Kan. App. 2d 478, 480, 793 P.2d 1267 (1990), King committed crimes and was sentenced to probation before the effective date of K.S.A. 21-

6

4614a (Ensley 1988), but his probation was revoked and he was ordered to serve his sentence after the effective date of the new statute. The issue in the case was whether the district court was required to award King credit for 127 days he served in the community corrections residential facility as a condition of his probation. The district court denied the jail credit because King had served the 127 days in the residential facility before the new statute took effect. 14 Kan. App. 2d at 479. On appeal, the State argued the new statute did not apply because King committed his crimes and was originally sentenced before the effective date of the new statute. King argued the new statute applied because his probation was not revoked and he was not ordered to serve his sentence until after the effective date of the new statute. K.S.A. 1989 Supp. 21-4614a provided:

"(a) *In any criminal action in which probation*, assignment to a conservation camp or assignment to community corrections *is revoked and the defendant is sentenced to confinement*, *for the purpose of computing the defendant's sentence* and parole eligibility and conditional release dates, *the defendant's sentence is to be computed from a date*, hereafter to be specifically *designated* in the sentencing order of the journal entry of judgment or the judgment form delivered with the defendant to the correctional institution. *Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent in a residential facility while on probation*, *assignment to a conservation camp or assignment to community correctional residential services program*. The commencing date of such sentence shall be used as the date of sentence and all good time allowances as are authorized by law are to be allowed on such sentence from such date as though the defendant were actually incarcerated in a correctional institution." (Emphases added.)

In determining the scope of the statute's application, this court focused on the language "in any criminal action in which probation . . . is revoked" and found that the language expressed a legislative intent for the statute to be applied retroactively to any time served upon probation revocation that occurred after the statute was enacted, no matter when the defendant's crime was committed. *King*, 14 Kan. App. 2d at 480-82. This court held:

7

"The clear language of the statute reflects the legislative intent to apply 21-4614a to all sentences imposed in probation revocation proceedings occurring after the statute's effective date and to allow credit for all time in custody during probationary periods, regardless of whether the crime for which the defendant was placed on probation occurred prior to the statute's effective date." 14 Kan. App. 2d at 482.

The State seizes upon the result in *King* and argues it supports the result the State wants to see here—that the 2024 amendment to K.S.A. 21-6615(a) applies to all sentences imposed after the effective date of the amendment. But *King* involved an appeal of the denial of jail credit in a different context than we have here. The jail credit statute construed in *King*, K.S.A. 1989 Supp. 21-4614a, for the first time made jail credit mandatory, rather than discretionary, for time a defendant served in a residential facility as a condition of probation, and it expressly applied "in any criminal action" in which probation is revoked. Our current jail credit statute, K.S.A. 2025 Supp. 21-6615(a), also begins with the language "in any criminal action," but this same language is not found in the 2024 amendment to the statute as an expression of legislative intent on when the amendment applies. We agree with our court's decision in *Mitchell* that there is no language in the 2024 amendment to K.S.A. 21-6615(a) expressing a legislative intent for the amendment to be applied retroactively to pending cases. See 66 Kan. App. 2d at 204.

Finally, we note the holding in *King* benefitted the defendant by requiring him to receive jail credit he would not have been required to receive before K.S.A. 21-4614a was enacted. The State's desired result here—applying the 2024 amendment to K.S.A. 21-6615(a) retroactively to Scott's pending case—would be detrimental to Scott by reducing the jail credit he will receive, potentially violating the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution. See *State v. Patton*, 315 Kan. 1, 3, 503 P.3d 1022 (2022) (interpreting amendment to Kansas' driving under the influence statute). The outcome in *King* did not implicate the Ex Post Facto Clause, and the court in that case did not discuss constitutional considerations in its opinion. We find *King* distinguishable from Scott's case and not controlling here.

As for whether retroactive application of the 2024 amendment to K.S.A. 21-6615(a) would violate the Ex Post Facto Clause, Scott did not make this argument in his opening brief. The State's brief mentions in passing there would be no violation of the Ex Post Facto Clause because Scott committed his crimes before *Ervin* was decided. Scott's reply brief asserts that applying the 2024 amendment retroactively would violate the Ex Post Facto Clause but offers no legal authority to advance the argument. Neither party has adequately briefed this argument for our consideration in Scott's case, and we decline to address the argument in this opinion. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed are deemed waived or abandoned); *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (a point raised incidentally in a brief and not argued therein is deemed waived or abandoned). Moreover, Scott is receiving the relief he is seeking without our court addressing this issue.

To sum up, Scott's convictions resulted from acts committed before May 23, 2024. Accordingly, we hold that K.S.A. 21-6615(a) (Self 2023) controls the jail credit Scott is entitled to receive because it was the law in effect when Scott committed his crimes. As in *Ervin*, the district court here was required to "award one day of credit for each day that [Scott] was incarcerated pending disposition of this case regardless of whether he received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. The State acknowledges that this court is bound by *Ervin* but nonetheless argues *Ervin* was wrongly decided. This court is duty-bound to follow Kansas Supreme Court precedent absent some indication our Supreme Court intends to depart from its prior position. See *Patton*, 315 Kan. at 16. We have no such indication here. See *State v. Zongker*, 322 Kan. 137, 586 P.3d 769 (2026).

As for relief, we need not vacate the district court's award of 320 days' jail credit because neither party disputes that calculation based on the dates in the journal entries. We must vacate only the district court's order prohibiting duplicative jail credit if Scott receives credit for the same dates in his two parole violation cases. We remand with

9

directions for the district court to enter an amended journal entry of judgment in each case striking the language prohibiting duplicative jail credit.

*Did the district court err by including fees in the journal entry of judgment that were not assessed at the sentencing hearing?*

Next, Scott claims the district court erred by including a witness fee and a B.F.A.W. fee in the journal entry of judgment because it did not approve either fee at the sentencing hearing. Scott asks us to vacate the fees and direct the district court to file an amended journal entry striking the fees. The State concedes the district court failed to find that the fees "bear a reasonable relation to the prosecution" and asks us to remand for the district court to make the necessary finding.

"During sentencing, the judge's oral pronouncement is controlling, not the journal entry." *State v. Edwards*, 309 Kan. 830, 835, 440 P.3d 557 (2019). Accordingly, "any journal entry variance from a judge's oral pronouncement during sentencing is a clerical error that may be corrected at any time." 309 Kan. at 835; see also K.S.A. 22-3504(b).

As with Scott's prior claim, resolution of this issue requires statutory interpretation. Statutory interpretation is a question of law subject to unlimited appellate review. *Daniels*, 319 Kan. at 342.

Upon a criminal conviction, court costs "shall be taxed against the defendant." K.S.A. 22-3801(a). K.S.A. 28-172a sets out the fees that may be assessed in criminal proceedings. Subsection (d) provides: "All other fees and expenses to be assessed as additional court costs shall be approved by the court, unless specifically fixed by statute." K.S.A. 28-172a(d). In interpreting this provision, the Kansas Supreme Court has held that "docket fees and other costs that are specifically fixed by statute must be taxed against the defendant, but that other fees to be assessed as court costs need to be approved by the

10

district court before they are taxed." *State v. Alvarez*, 309 Kan. 203, 208, 432 P.3d 1015 (2019). Thus, the witness fee and the B.F.A.W. fee included in Scott's journal entry could have been ordered at the district court's discretion but only if the district court first found that those costs "bear a reasonable relation to the prosecution." 309 Kan. at 208.

The docket fee, booking fee, and BIDS application fee are mandatory court costs and can be included in a journal entry of judgment even when not approved by the district court at the sentencing hearing. *State v. Phillips*, 289 Kan. 28, 45, 210 P.3d 93 (2009). But a witness fee and a B.F.A.W. fee are discretionary costs that must be approved by the district court before they are taxed. Here, the district court did not mention the witness fee or the B.F.A.W. fee at the sentencing hearing, and the only mention of those fees was in the journal entry of judgment. Scott asks us to vacate these fees and remand for the district court to file an amended journal entry striking the fees. The State concedes the district court failed to find that the fees bear a reasonable relation to the prosecution and asks us to remand to the district court to make the necessary finding.

Under the facts presented here, we find Scott's requested relief is more appropriate. Had the district court at least mentioned the witness fee and the B.F.A.W. fee at the sentencing hearing but failed to find that the fees bear a reasonable relation to the prosecution, then we would remand to allow the district court to make the necessary finding. See, e.g., *State v. Ayers*, 309 Kan. 162, 163-65, 432 P.3d 663 (2019) (vacating BIDS attorney fee assessment where district court assessed the fee at sentencing but failed to make statutory findings and remanding for reconsideration).

But where, as here, the district court did not even mention the witness fee or the B.F.A.W. fee at the sentencing hearing, we find it inappropriate to remand to give the State a second bite from the apple to have these fees properly assessed. See, e.g., *State v. Aguilar*, No. 126,745, 2026 WL 787609, at *9-10 (Kan. App. 2026) (unpublished opinion) (vacating witness and mileage fees included in a journal entry but not approved

11

by the district court at sentencing); *State v. Walker*, No. 125,554, 2023 WL 7983816, at *6 (Kan. App. 2023) (unpublished opinion) (vacating sexual assault kit fee with directions for the district court to file an amended journal entry striking the fee). Thus, we vacate the witness fee and the B.F.A.W. fee and direct the district court to file an amended journal entry striking the fees.

Sentence vacated in part and case remanded with directions.